UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD BYRD,

              Plaintiff,

v.

RANDALL HAAS, et al.,

              Defendants.

_____/

Case No. 2:17-cv-11427

HONORABLE STEPHEN J. MURPHY, III

## **OMNIBUS OPINION AND ORDER**

Plaintiff Gerald Byrd filed a pro se prisoner complaint in 2017 that alleged Defendants had violated his constitutional rights and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq.* ECF 1. The complaint identified eight Defendants: Randall Haas, David Leach, John Doe, Leroy White, Heidi Washington, Jane Doe Taylor, Darrell Steward, and Richard Russell. *Id.* at 1. In August 2017, Byrd filed a supplemental complaint and added Defendants Kenneth McKee and Cyril Umeh and terminated Defendant John Doe. ECF 24. The Court referred all pretrial matters to Magistrate Judge Stephanie Dawkins Davis. ECF 9. The Court later dismissed Defendants Taylor, White, Russel, Steward, and Washington. ECF 63. And in December 2019, the case was reassigned to Magistrate Judge Michael J. Hluchaniuk.

On January 29, 2020 the remaining Defendants—Haas, Leach, McKee, and Umeh—moved for summary judgment. ECF 80. Then, in May 2020, Magistrate Judge Hluchaniuk submitted a report and recommendation ("Report") and recommended

1

that the Court grant in part and deny in part Defendants' motion for summary judgment. ECF 98. Both Defendants and Byrd raised timely objections. ECF 102, 103. The Court has thoroughly reviewed the Report, the summary judgment motion, and the objections. For the reasons below, the Court will adopt in part and reject in part the Report and will grant the motion for summary judgment in part. The Court will address the RLUIPA claims in a separate order.

## BACKGROUND

As an initial matter, Defendants objected to the Report's recitation of the facts of the case. ECF 103, PgID 2710. Defendants claimed the Report "homes [sic] in on one factual scenario it believes should permit Byrd to proceed." *Id.* at 2709–10. For this reason, the Court will provide a brief recitation of the facts, viewed in the light most favorable to Byrd as required by Federal Civil Procedure Rule 56.

Byrd is a Michigan Department of Corrections ("MDOC") inmate. ECF 98, PgID 2588. In 2015, Byrd made a religious declaration to MDOC as an adherent of the Ifa religion. ECF 80-5, PgID 860. Ifa is also known as "Yoruba,"[1] and refers to a cultural group from West Nigeria that predominantly practices Ifa. *Id.* Although MDOC recognized Yoruba as a religion, it did not authorize its adherents to conduct group religious services. ECF 80-2, PgID 774. Under MDOC's policies, adherents of Yoruba may possess one set of sixteen cowrie shells, one strand of white consecrated beads, and one unframed picture of The Orisha. *Id.*

---

[1] Because MDOC used the word "Yoruba" to describe adherents of Ifa, the Court will do the same for consistency and clarity.

Yet, according to Byrd, to properly practice Yoruba he needed to possess several other religious items and attend group services. ECF 80-5, PgID 873. In September 2015 Byrd sent a request to Defendant David Leach, the Special Activities Coordinator at Saginaw, and requested group services and additional religious items for Yoruba adherents. ECF 80-3, PgID 776–79.

But in December 2015, Byrd was transferred from the Saginaw Correctional Facility to the Macomb Correctional Facility. While at Macomb, Byrd received Defendant Leach's response to his initial September 2015 request. ECF 80-6. Defendant Leach explained that MDOC Policy Directive 05.03.150 required requests for religious items to be submitted in writing to the prison warden.[2] *Id.* at 892. And because of the requirement, Byrd's request was "returned for submission in accordance with PD [Policy Directive] 05.03.150." *Id.*

In January 2016, Byrd took his original request that was addressed to Defendant Leach, added a handwritten "cc" portion, and sent out several copies—one to Defendant Randall Haas (warden at Macomb), a copy to Kenneth McKee (Deputy Director of MDOC), and an additional copy to Defendant Leach. ECF 87-4, PgID 1393–94.

In February 2016, Byrd sent Defendant Haas another letter and explained that he practiced Yoruba and that Defendant Leach directed him to submit a copy of his

---

[2] The Court notes that the process for requesting group religious services mirrors the process for requesting additional religious items, contrary to Report's statement. ECF 98, PgID 2587; ECF 87-3, PgID 1284. Byrd's objection to the factual statement is therefore affirmed.

request directly to his warden. ECF 80-7. Byrd also enclosed Defendant Leach's response and his requests for additional religious items. *Id.* The record indicates that Defendant Haas then forwarded Byrd's note to Chaplain Leroy White and asked him to discuss the request with Byrd. ECF 87-15, PgID 2161.

In March 2016, Byrd sent his request letter again, this time to Defendants Leach and McKee. ECF 87-20, 87-22. In response, Defendant Leach asked Chaplain White to discuss the request with Byrd because the "proposal has to reach [him] through the chain of command first." ECF 87-14, PgID 2156. Chaplain White told Defendant Leach that Byrd had sent the request to Defendant Haas in September 2015, to which Leach responded, "That should be fine." *Id.* Then, in June 2016 Byrd wrote to Defendant Haas for a status update, ECF 87-16, and Byrd claimed that he spoke with Chaplain White again in July. ECF 24, PgID 95.

Defendant McKee did not recall ever receiving a letter from Byrd, and there is no dispute that McKee did not receive a request from the Chaplain's Advisory Council, as required by the chain of command (that is laid out in the Policy Directive). ECF 80-11, PgID 1081, 1085.

A year later, Cyril Umeh packed up Byrd's cell after he was sent to segregation. ECF 87-4, PgID 1448. At an MDOC facility, when a cell is packed up due to a transfer, the officer completes a "transfer pack up slip" itemizing everything, including anything that looks like trash, that was found in the cell. ECF 80-12, PgID 1142. All the items are then placed in a bag or bin in storage. *Id.* Defendant Umeh did not recall the specifics of packing Byrd's cell, but insisted that he never threw away any

property without permission. *Id.* at 1177–78. To the contrary, however, Byrd insisted that Defendant Umeh intentionally threw away his four cowrie shells. ECF 87-4, PgID 1448. The shells were not included on the inventory packing list completed by Defendant Umeh.

Byrd sued in 2017 and claimed that various officers at MDOC had violated the First Amendment Free Exercise clause, RLUIPA, and the Fourteenth Amendment. ECF 24, PgID 104–05. He asked for both injunctive relief and money damages. *Id.* at 112. Defendants filed a series of motions to dismiss that were ultimately denied. ECF 27, 28, 49, 55, 63. After discovery, Defendants moved for summary judgment. ECF 80. Byrd responded, ECF 87, and the Report was issued. ECF 98.

## LEGAL STANDARD

Federal Civil Rule 72(b) governs the review of a magistrate judge's report. A district court's standard of review depends on whether a party files objections. The Court need not review any portion of a Report to which no party has objected. *Thomas v. Arn*, 474 U.S. 140, 153 (1985). A de novo review is required, however, if the parties "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). In conducting a de novo review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## DISCUSSION

I.   <u>Objections to Report Regarding § 1983 Claims Against Haas</u>

    A.   *First Amendment Free Exercise Claim*

The Report recommended denying summary judgment to Defendant Haas on Byrd's First Amendment Free Exercise claim. ECF 98, PgID 2609. Defendants objected to the Report and argued that Haas was entitled to qualified immunity and summary judgment. *See* ECF 103.

    1.   *Monetary Damages*

Here, Byrd alleged that Defendant Haas personally violated his First Amendment right to freely exercise his religion by refusing to approve group religious services and possession of certain religious personal property. ECF 24, PgID 92. Byrd specifically alleged that Defendant Haas ignored and did not pass along his request for group religious services and personal religious items. *Id.* at 95–96; ECF 80, PgID 722. Before reaching the merits of Byrd's First Amendment claim, the Court must determine whether Defendant Haas was entitled to qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (finding that government officials sued in their individual capacity are entitled to seek qualified immunity unless their actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known"); *see also Colvin v. Caruso*, 605 F.3d 282, 291 (6th Cir. 2010).

First, the Court must properly define the constitutional right at issue. Here, Byrd described the rights violation as "restricting Plaintiff from freely practicing his religion by refusing to approve group religious services and personal religious

6

property. . . ." ECF 24, PgID 92. The Court will frame the question differently: Do prison officials violate inmates' Free Exercise rights when they do not approve group religious services or expansions of personal religious property through an appropriate process?

A qualified immunity analysis requires a two-pronged inquiry. First, the Court considers whether the facts, "when taken in the light most favorable to the party asserting the injury, show the [defendant's] conduct violated a constitutional right[.]" *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (quoting *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001)). Second, the Court determines whether the right was "clearly established such 'that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Saucier*, 533 U.S. at 201–02). The Court may use its discretion to determine which prong to analyze first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Ultimately, "[p]laintiff bears the burden of showing that defendants are not entitled to qualified immunity." *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)).

To determine whether a constitutional violation occurred here, the Report applied the four-part balancing inquiry established by the Supreme Court's decision in *Turner v. Safley*, 482 U.S. 78 (1987). ECF 98, PgID 2601–02. But *Turner* addresses facial challenges to prison regulations and not as-applied challenges against the officials implementing those valid regulations. 482 U.S. at 99–100. Reliance on *Turner* was misplaced because Byrd did not challenge the facial validity of the MODC

Regulation. Instead, Byrd only argued that the regulation—as applied by Haas—violated his constitutional rights.

Given Byrd's as-applied challenge, the Sixth Circuit, in related contexts, seemed to explain that "isolated incident[s]" or actions resulting from "confusion or miscommunication," do not violate the First Amendment. *See Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019) (citing, in part, *Beebe v. Birkett*, 749 F. Supp. 2d 580, 597 (E.D. Mich. 2010)); *Colvin*, 605 F.3d at 293–94. Here, Byrd has not alleged that Defendant Haas's failure to approve his request for group religious services or personal religious property was anything more than either an isolated incident or the result of confusion or miscommunication. And, as the Report explained, the record indicated that Defendant Haas was not the decisionmaker with authority to grant or deny Byrd's ultimate request. ECF 98, PgID 2596. As a result, Defendant Haas's failure to act did not violate Byrd's First Amendment Free Exercise rights, and he is therefore entitled to qualified immunity as to the monetary damages under this claim.

2.  *Injunctive Relief*

Because Byrd also sued for injunctive relief as to his First Amendment Free Exercise claim, the Court must consider whether Defendant Haas is entitled to summary judgment on the injunctive relief claim as well. Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Generally, the defense of qualified immunity is unavailable for "§ 1983 cases against individuals where

injunctive relief is sought instead of or in addition to damages." *Pearson v. Callahan*, 555 U.S. 223, 242 (2009). But because the Court found that Defendant Haas's actions do not violate Byrd's constitutional rights, *i.e.*, that there has been no constitutional violation, Defendant Haas is entitled to judgment as a matter of law. Thus, Defendant Haas is entitled to summary judgment as to injunctive relief under the First Amendment Free Exercise claim. The Court will therefore sustain Defendant's objection to the First Amendment claim and overrule the Report's recommendation denying summary judgment and qualified immunity on the First Amendment claim.

### B. *Fourteenth Amendment Equal Protection Claim*

Next, the Report recommended that summary judgment be granted in favor of Defendant Haas on the Fourteenth Amendment Equal Protection claim. *Id.* at 2610, 2620. Byrd objected to the Report's recommendation. ECF 102, PgID 2700. Byrd alleged that Defendant Haas violated his Fourteenth Amendment equal protection rights because Haas knew that the MDOC policy allowed other religious believers to gather for group services or to possess personal items similar to those Byrd requested. ECF 87, PgID 1275. Byrd did not challenge the MDOC policy itself, but rather Haas's implementation of it.[3] The Report recommended granting summary judgment to Defendant Haas on the claim because Byrd failed to show that any alleged differential treatment resulted from "*intentional* or *purposeful* discrimination by Haas." ECF 98, PgID 2605 (emphasis in original). The Court agrees.

---

[3] The Court notes that none of the remaining Defendants hold policymaking authority within MDOC and therefore a claim about the constitutionality of the policy itself is not before the Court.

1.    *Monetary Damages*

There is no evidence in the record that showed Defendant Haas's failure to forward Byrd's request for group religious services or personal religious property stemmed from any animus for Yoruba or followers of Ifa. Byrd did not offer any evidence that Defendant Haas treated other religions—conventional or otherwise—any differently than Yoruba. Without that sort of evidence, all that is left is Byrd's speculation that Defendant Haas's failure to act stemmed from discriminatory intent. But "speculations or intuitions" cannot survive summary judgment. *Frazier v. USF Holland, Inc.*, 250 F. App'x 142, 148 (6th Cir. 2007) (citing *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002)). And without proof of discriminatory intent, discriminatory enforcement, or animus there is no equal protection violation. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977) ("Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."); *see also Romer v. Evans*, 517 U.S. 620, 632 (1996) (asserting that laws created out of animus towards a class violate the Equal Protection Clause); *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74 (1886) (explaining that the Equal Protection Clause is violated if a facially valid law is administered unequally).

Byrd also encouraged the Court to look to the Sixth Circuit's recent decision in *Koger v. Moher* to evaluate his equal protection claim. 964 F.3d 532 (6th Cir. 2020). But the present case is distinguishable from *Koger* in at least one very important respect. The court in *Koger* evaluated an Equal Protection claim about "'a *facially discriminatory* distinction between' Islam and Rastafarianism." *Koger*, 964 F.3d at

545 (emphasis added) (quoting *Maye*, 915 F.3d at 1086). Unlike the claims in *Koger*, Bryd did not allege any discriminatory MDOC policy, he merely alleged discriminatory enforcement of a facially neutral policy.

In short, without a constitutional violation, Defendant Haas is entitled to qualified immunity as to Byrd's Fourteenth Amendment Equal Protection claim for monetary damages.

2.    *Injunctive Relief*

Defendant Haas is entitled to summary judgment for injunctive relief as to the Fourteenth Amendment Equal Protection claim as well. As set forth above, Byrd's claim that Defendant Haas acted with discriminatory intent when he failed to forward along Byrd's request for additional religious items and group religious services is speculative at best. And Byrd has not shown that Defendant Haas administered the MDOC Policy Regulation in an unequal manner. Speculation is insufficient to survive summary judgment. *See Frazier*, 250 F. App'x at 148 (citing *Mulhall*, 287 F.3d at 552). Defendant Haas is therefore entitled to summary judgment as to the injunctive relief under the Fourteenth Amendment Equal Protection claim. The Court will overrule Byrd's objection and will adopt the Report's finding that there was no Fourteenth Amendment Equal Protection violation against Defendant Haas entitled to injunctive relief.

C.    *Fourteenth Amendment Due Process*

As to the final claim against Defendant Haas, the Report found that to the extent that Byrd had intended to raise a Fourteenth Amendment procedural due

11

process claim based on a property interest, it failed, and Haas was entitled to summary judgment. ECF 98, PgID 2610. The Report also recommended denying summary judgment to Defendant Haas as to Byrd's liberty interest claim, finding that "Haas'[s] improper processing of the request effectively imposed an atypical and significant hardship on plaintiff, and his improper handling of the request took away what process [Byrd] had [] under prison policy." *Id.* at 2609. Defendants objected to the Report's determination and argued that no constitutional violation occurred and that Haas was therefore entitled to qualified immunity on the claim. ECF 103, PgID 2723–24. In response, Byrd clarified that he had only claimed that Defendants violated his liberty interest to "practice his religion." ECF 105, PgID 2756.

   1.   *Monetary Damages*

   To prove a violation of a person's procedural due process rights, a plaintiff must show: "1) a liberty . . . interest protected by the due process clause, 2) a deprivation of that protected interest within the meaning of the due process clause; and 3) defendant's failure to afford adequate procedural rights prior to the deprivation." *Russell v. Wilkinson*, 79 F. App'x 175, 178 (6th Cir. 2003). In the context of the liberty interests owed to a prisoner, the "inmate must show that the actions of prison officials either had the effect of altering the length or term of imprisonment or amounted to 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Thus, to find a constitutional violation, the Court must determine whether Defendant Haas's actions created an "atypical and significant hardship" for Byrd.

The Report accurately noted, "[w]hat constitutes an atypical and significant hardship is not clearly defined, at least not in the context of a free exercise claim like [P]laintiff's." ECF 98, PgID 2607. Neither the parties, nor the Report, nor the Court's research have revealed any Supreme Court or Sixth Circuit case law that outlines that a warden's ineffective processing of a prisoner's request for group religious services as an "atypical and significant hardship." *Russell*, 79 F. App'x at 178. *See also Hearring v. Sliwowski*, 712 F.3d 275, 280 (6th Cir. 2013) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)) ("In determining whether a right was clearly established, we look first to decisions of the Supreme Court, then to our own precedents, and then to decisions of other courts of appeal, and we ask whether these precedents 'placed the . . . constitutional question beyond debate.'"). The Court also does not believe Defendant Haas's action or inaction is clearly established based on a "general statement[] of law" or general obviousness. *Hearring*, 712 F.3d at 280 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

As a result, Defendant Haas's actions cannot have violated a "clearly established right" and therefore, Haas is entitled to qualified immunity as to Plaintiff's Fourteenth Amendment Due Process claim for monetary damages. *Id*. at 279 (quoting *Harlow*, 457 U.S. at 818) ("[Q]ualified immunity shields officials from liability insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.") (internal quotations omitted). Defendants' objection is therefore affirmed and the Report is overruled as to the due process claim for monetary damages.

2. *Injunctive Relief*

The Court must consider whether to grant summary judgment to Defendant Haas on Byrd's injunctive relief as to the Fourteenth Amendment Due Process claim based on an alleged liberty interest violation. Unlike the Free Exercise and Equal Protection claims when qualified immunity was appropriate based on prong one, the lack of a constitutional violation, the Court granted qualified immunity based on prong two: a lack of clearly established law. Because answering prong two provides less insight into whether the moving party is entitled to a judgment as a matter of law, the Court must engage in a more thorough summary judgment analysis for the Due Process claim.

And the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must identify specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

Defendants argued that Byrd "had no constitutional right to have his request forwarded" and that "prison regulations [do not] create a protected liberty interest." ECF 80, PgID 742. Thus, Defendant argued that because the Due Process Clause did not cover Byrd's claims, the claims fail as a matter of law. *Id.* To the contrary, Byrd argued that the MDOC policy acts as a complete denial of his ability to practice his faith, outside the bounds of the "ordinary incidents of prison life." ECF 87, PgID 1276.

The question before the Court, therefore, is whether Defendant Haas failed to forward Byrd's requests because MDOC policy prevented him from forwarding a defective request or because Defendant Haas negligently failed to forward Byrd's properly submitted requests. If Byrd's requests were defective, then Defendant Haas was merely enforcing the MDOC policy by not forwarding them. *See* ECF 80-2, PgID 763. In his deposition testimony, Defendant Haas testified that he did not recall receiving any requests for new religious items or requests for group religious services during his time at Macomb Correctional Facility. ECF 80-10, PgID 1007–08. Even so, there is evidence in the record that at least one of Byrd's requests, though perhaps defective, was received. ECF 80-7, PgID 894; ECF 87-21, PgID 2283–88. Thus, there is a genuine dispute of material fact over the requests sent by Byrd, the requests received by Defendant Haas as warden, and why such requests were never forwarded.

Defendant's objection is therefore overruled and the Report is affirmed as to the due process claim for injunctive relief.

II.   Byrd's Objection to the Grant of Qualified Immunity to McKee

Next, the Report found that "qualified immunity should attach to Defendant McKee for the First and Fourteenth Amendment claims against him." ECF 98, PgID 2599. Byrd objected and argued that Defendant McKee should be denied qualified immunity and held liable under a theory of supervisory liability. ECF 102, PgID 2694–99.

As a Deputy Director of MDOC, Policy Directive 05.03.150 tasked Defendant McKee with "the final decision as to whether the religious item will be approved. . ." but only after such a request had gone to the prisoner's warden, the SCFA Special Activities Coordinator, and the Chaplain's Advisory Committee. ECF 80-2, PgID 763. There is no dispute that Byrd's requests never reached Defendant McKee. The Report recommended granting Defendant McKee qualified immunity because he did not have a duty to act on Byrd's request until it reached him through the chain of command—an event that never occurred. ECF 98, PgID 2599. Byrd objected and argued that Defendant McKee was not entitled to qualified immunity because he is "liable for [employees'] constitutional violations as the[ir] supervisor." ECF 102, PgID 2695.

Under Sixth Circuit precedent:

[Section] 1983 liability of supervisory personnel must be based on more than the right to control employees. Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of

16

> misconduct or in some other way directly participated in it. At a
> minimum, a § 1983 plaintiff must show that a supervisory is at least
> implicitly authorized, approved or knowingly acquiesced *in the
> unconstitutional conduct* of the offending subordinate.

*Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005) (emphasis added) (quoting

*Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). Thus, supervisory liability

under § 1983 only arises if the subordinates in question have participated in

unconstitutional behavior. *See DeMerrell v. City of Cheboygan*, 206 F. App'x 418, 430

(6th Cir. 2006) ("[I]f there is no unconstitutional conduct by an offending subordinate,

as in the instant case, a plaintiff cannot make the required [supervisory liability]

showing."). Because the Court has found that Defendant McKee's subordinates did

not commit unconstitutional behavior, Byrd failed to prove supervisory liability under

§ 1983. The Court overrules Plaintiff's objection and adopts the Report's finding that

Defendant McKee is entitled to qualified immunity, and therefore the claim for

monetary damages is dismissed.

The Report failed to make any recommendation as to whether Byrd was

entitled to injunctive relief for the actions of Defendant McKee. Instead, the Report

is limited to a brief, qualified immunity analysis. ECF 98, PgID 2599. But because

Byrd requested injunctive relief against all defendants and claims for injunctive relief

are excluded from qualified immunity, the Court must consider the claim as well. As

previously stated, summary judgment is proper if there is no genuine dispute as to

any material fact and the moving part is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56. There is no genuine dispute of material fact as to the actions of

Defendant McKee. It is clear that Defendant McKee became responsible for requests

in the MDOC system only after such a request had gone to the warden, the Special Activities Coordinator, and the Chaplain's Advisory Council. ECF 80-2, PgID 763. There is no dispute that Byrd's request never went past the initial step. ECF 98, PgID 2599. Thus, Defendant McKee can only be held liable under a theory of supervisory liability. But because the Court finds that Defendant McKee's subordinates' actions do not violate Byrd's constitutional rights, there is no supervisory liability and Defendant McKee is entitled to judgment as a matter of law. Therefore, Defendant McKee is also entitled to summary judgment as to the injunctive relief claimed against him.

III.    Defendants' Objection to the Report Regarding the RLUIPA Claim

The Report recommended denying summary judgment to Defendants Haas, Leach, and McKee under RLUIPA because "[q]uestions of fact remain as to whether these defendants substantially burdened [P]laintiff's religious practice." ECF 98, PgID 2611–12. The Court will address the RLUIPA claims in a separate order.

IV.    Objection to Report Regarding Claims Against Umeh

The Report recommended denying summary judgment to Defendant Umeh on Byrd's First Amendment Free Exercise claim but granting summary judgment to Defendant Umeh on Byrd's Fourteenth Amendment Due Process and RLUIPA claims. ECF 98, PgID 2620. Neither party objected to the Report's recommendation granting Defendant Umeh summary judgment on the Fourteenth Amendment

claims, so the Court will adopt the Report and grant summary judgment as to that claim.

Defendants did, however, object to the Report's recommendation that Plaintiff had a viable First Amendment claim against Defendant Umeh. *See* ECF 103. The Report found that Defendant Umeh was not entitled to qualified immunity as to the Free Exercise claim against him because "it was clearly established in June 2017 that [Byrd] had the right to the free exercise of his religion unless that exercise posed a security risk in the prison." ECF 98, PgID 2619. Defendants objected and argued that no evidence supported a First Amendment claim against Defendant Umeh. ECF 103, PgID 2729.

A.    *Monetary Damages*

Like the claim against Defendant Haas, the Report alluded to the four-part balancing test in the Supreme Court's decision in *Turner* as the means to addressing whether Defendant Umeh's actions constituted a constitutional violation. ECF 98, PgID 2619. But again, *Turner* addresses facial challenges to prison regulations, *not* as-applied challenges brought against individual officers who implement those valid regulations. Again, like the claim against Defendant Haas, Byrd did not challenge the constitutionality of the MDOC regulation that Defendant Umeh allegedly failed to follow.

So, as set forth above, the Sixth Circuit has illustrated that "isolated incident[s]" or as the result of "confusion or miscommunication" do not violate the First Amendment. *See Maye*, 915 F.3d at 1083 (citing, in part, *Beebe*, 749 F. Supp. 2d

at 597); *Colvin*, 605 F.3d at 293–94. The facts viewed in the light most favorable to Byrd, show that Byrd left some cowrie shells on his altar on his desk when he went into segregation. ECF 80-5, PgID 883. Defendant Umeh was later tasked with packing up Byrd's cell. ECF 87-23, PgID 2346–47. And when Byrd returned from segregation the cowrie shells were gone. ECF 87-4, PgID 1448–49. The reasonable inference, therefore, is that Umeh lost or threw away the shells during the packing up process. And Umeh denies that conduct. Regardless, Byrd has failed to show that Defendant Umeh's behavior was anything more than an "isolated incident" in which his property was misplaced or thrown away. Byrd has not shown that Defendant Umeh, or any other officer, regularly threw away religious items belonging to Yoruba practitioners or any other faith tradition. Byrd has not shown that Defendant Umeh understood that the cowrie shells were a religious item and that his actions were deliberate, rather than the result of confusion. As a result, Defendant Umeh's failure to act did not violate Byrd's First Amendment Free Exercise rights, and he is therefore entitled to qualified immunity as to this claim for monetary damages. Defendant's objection to the First Amendment claim is sustained, and the Report is overruled as to the monetary damages.

B.    *Injunctive Relief*

Because Byrd has failed to show Defendant Umeh's actions were deliberate rather than the result of confusion, nor that they extended beyond an "isolated incident," he has failed to show Defendant Umeh's actions constituted a First Amendment violation. Nor is there any genuine dispute of material fact regarding

the incident with Defendant Umeh. Because the Court finds that Defendant Umeh's actions do not violate Byrd's constitutional rights, *i.e.*, that there has been no constitutional violation, Defendant Umeh is entitled to a judgment as a matter of law. Defendant Umeh is therefore entitled to summary judgment as to the injunctive relief under the First Amendment Free Exercise claim. Defendant's objection to the First Amendment claim is sustained, and the Report is overruled as to the monetary damages.

V.    Byrd's Motion for Leave to File Supplemental Authority

Byrd recently moved for leave to file supplemental authority for the proper standard for evaluating an equal protection claim at the summary judgment stage. ECF 107. Specifically, Byrd pointed to the Sixth Circuit's decision in *Koger v. Moher*, 964 F.3d 532 (6th Cir. 2020). ECF 107, PgID 3047. The Court will grant the motion and has taken the precedent in *Koger* into consideration.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' objections [103] are **OVERRULED IN PART** and **AFFIRMED IN PART.**

**IT IS FURTHER ORDERED** that Plaintiff's objections [102] are **OVERRULED.**

**IT IS FURTHER ORDERED** that the Report and Recommendation [98] is **ADOPTED IN PART** and **OVERRULED IN PART.**

**IT IS FURTHER ORDERED** that Defendant Haas is **ENTITLED** to qualified immunity as to Plaintiff's First Amendment Free Exercise, Fourteenth

Amendment Equal Protection, and Fourteenth Amendment Due Process claims for monetary damages.

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** in favor of Defendant Haas on Plaintiff's First Amendment Free Exercise and Fourteenth Amendment Equal Protection claims for injunctive relief.

**IT IS FURTHER ORDERED** that summary judgment is **DENIED** as to Defendant Haas on Plaintiff's Fourteenth Amendment Due Process claim for injunctive relief.

**IT IS FURTHER ORDERED** Defendant McKee is **ENTITLED** to qualified immunity as to Plaintiff's First Amendment Free Exercise claim and Fourteenth Amendment Due Process and Equal Protection claims for monetary damages.

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** in favor of Defendant McKee as to Plaintiff's First and Fourteenth Amendment claims for injunctive relief.

**IT IS FURTHER ORDERED** that Defendant Umeh is **ENTITLED** to qualified immunity as to Plaintiff's First Amendment claim for monetary damages.

**IT IS FURTHER ORDERED** that summary judgment shall be **GRANTED** in favor of Defendant Umeh on Plaintiff's Fourteenth Amendment claim and First Amendment claim for injunctive relief.

The Court will refrain from ruling on the RLUPA claim and will address it in a separate order.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: October 19, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 19, 2020, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager