UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD BYRD,

            Plaintiff,

v.

RANDALL HAAS, et al.,

            Defendants.

                                      /

Case No. 2:17-cv-11427

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER**
**DENYING MOTION FOR SUMMARY JUDGMENT [80]**

Plaintiff Gerald Byrd is a prisoner at the Michigan Department of Corrections ("MDOC") Macomb Correctional Facility. ECF 24, PgID 89. He sued several high-ranking MDOC employees under 42 U.S.C. § 1983 for violating his rights provided by the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). *Id.* at PgID 104–05. Defendants Randall Haas, David Leach, Kenneth McKee, and Cyril Umeh each asserted qualified immunity as an affirmative defense to the § 1983 claims and moved for summary judgment on all claims. ECF 80. The Court granted Defendants' motion in two orders, ECF 109 and 114, but the Sixth Circuit reversed and remanded as to Defendants Haas, Leach, and McKee. ECF 118. The Court must now reconsider Defendants' summary judgment motion, ECF 80, and analyze the case "as a constructive denial of [Plaintiff's] request for group religious services and religious property." ECF 118,

1

PgID 3150. For the following reasons, the Court will deny the summary judgment motion.[1]

## BACKGROUND

In the interest of judicial economy, the Court will incorporate the background section from its earlier order, ECF 109, PgID 3056–59. The Court adds the following background.

In January 2022, after the Court's prior orders, ECF 109; 114, the MDOC published a new policy directive that approved use of several items Plaintiff had requested. ECF 133, PgID 3246, 3266; *see* ECF 132, PgID 3200–01. The only items the MDOC has continued to categorically deny Plaintiff, despite the new policy, are all-white clothing and an Ide bracelet. ECF 133, PgID 3246. All the other items Plaintiff requested "were approved for group religious services." *Id.* at 3246, 3266.

## LEGAL STANDARD

The Court must grant summary judgment "if the movant shows that there is no genuine [issue] as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must identify specific portions of the record "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must present "specific facts showing

---

[1] Based on the parties' briefings, the Court will resolve the motion on the briefs without a hearing. *See* E.D. Mich. L.R. 7.1(f)(2).

that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis omitted).

A fact is material if proof of it would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). An issue over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When it considers a summary judgment motion, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

The Court will first address the summary judgment motion on the RLUIPA claim. After, the Court will resolve Defendants' qualified immunity defense and summary judgment motion for each § 1983 claim.

I.  RLUIPA Claim

The Court will deny summary judgment for the RLUIPA claim. A RLUIPA claim must satisfy a three-part test. First, a prisoner must show that a "policy [in his prison] implicates his religious exercise." *Holt v. Hobbs*, 574 U.S. 352, 360 (2015). "[A] prisoner's request for an accommodation must be sincerely based on a religious belief." *Id.* at 360–61. Second, the prisoner must demonstrate that the defendant "substantially burdened" his religious exercise by not granting an accommodation. *Id.* at 361. Then, if the prisoner has made the showing required by parts one and two,

3

the defendant must "prove that its denial . . . was the 'least restrictive means of furthering [a] compelling governmental interest.'"[2] *Byrd v. Haas*, 17 F.4th 692, 700 (6th Cir. 2021) (alteration in original) (quoting 42 U.S.C. § 2000cc-1(a)(1)–(2)). In other words, the defendant's justification must survive strict scrutiny. *Holt*, 574 U.S. at 362.

Strict scrutiny "is an exacting standard." *Byrd*, 17 F.4th at 700. RLUIPA extends inmates' free-exercise rights "beyond those offered under the Constitution." *Haight v. Thompson*, 763 F.3d 554, 562 (6th Cir. 2014). A defendant must show that a denial of a plaintiff's request for a religious accommodation furthered a compelling State interest. *Id.* at 561. And the proposed interest must not be "offered for the first time in litigation." *Id.* at 562. Instead, defendants must show "that the alleged objective [of denying a plaintiff accommodations] was the . . . 'actual purpose' for the [government's action]." *Shaw v. Hunt*, 517 U.S. 899, 908 n.4 (1996).

The Sixth Circuit already held that Plaintiff met his burden under parts one and two of the three-part RLUIPA test. *Byrd*, 17 F.4th at 699. As a result, the Court need only consider whether Defendants' policies survive strict scrutiny.

---

[2] Defendants argued that "[Plaintiff] must demonstrate the Defendants (1) placed a substantial burden on [Plaintiff's] ability to practice Yoruba, and (2) that the burden does not serve a compelling governmental interest (3) while ignoring less restrictive means in furthering that interest." ECF 80, PgID 733 (internal quotation marks omitted). But Defendants bear the burden under the strict scrutiny analysis. *Holt*, 574 U.S. at 362.

4

Defendants offered no pre-suit evidence of any reason for denying Plaintiff's requests for religious accommodations.[3] *See* ECF 80; 133; 138. As the Sixth Circuit noted, "[Plaintiff] took every conceivable action to pursue his claim . . . [but] [D]efendants left him in the dark." *Byrd*, 17 F.4th at 698. Put another way, although Defendants did not deny Plaintiff's claim, they left it to "languish in a bureaucratic black hole." *Id.* Defendants thus constructively denied Plaintiff's claims while circumventing their responsibility to provide a reason for the denial. *See id.* at 700 ("[T]his case should be analyzed as a constructive denial of [Plaintiff's] request for group religious services and religious property."). After litigation began, Defendants argued that they denied Plaintiff's requests based on a "proper[] balance[] [of] safety and security concerns." ECF 133, PgID 3247. But an after-the-fact justification is not enough to show that a compelling interest was served when Defendants denied Plaintiff's requests.

"[E]xplanations offered for the first time in litigation ought to come with a truth-in-litigating label, requiring the official to disclose whether the new explanations motivated the prison officials at the time of decision or whether they amount to post hoc rationalizations. Only the true explanations for the policy count." *Haight*, 763 F.3d at 562 (citation omitted); *see also Koger v. Mohr*, 964 F.3d 532, 542

---

[3] Defendants continue to deny Plaintiff possession of a bracelet he requested. ECF 133, PgID 3246. They allowed him access to the other items he desired, a wooden altar, Kola nuts, herbs, Elegba statute, and Opon Ifa divination tray, but only during group religious ceremonies. *Id.* But "this is not what [Plaintiff] requested." ECF 132, PgID 3191. Because he sought the items for "personal services" and has not yet received them, his request for injunctive relief as to those items is not moot. *Id.*

5

(6th Cir. 2020) (reversing a grant of summary judgment because "[t]he record does not indicate that any [prison] official was concerned about the lack of specificity in [the prisoner's] requests prior to this litigation."). A prison official cannot show a compelling justification when the justification "appear[s] only in affidavits that form the litigation record in the case, not the record memorializing the prison's decision-making process in response to the inmates' grievance." *Haight*, 763 F.3d at 562.

Defendants' security concerns are documented only in the litigation record. *See Byrd*, 17, F.4th at 699; *see also* ECF 133, PgID 3267–80. Defendants offered no pre-litigation evidence that detailed their decision-making process. For instance, Defendants offered no documentation to support their claim that security was the genuine concern that led to a denial of Plaintiff's religious accommodation requests. *See* ECF 80, ECF 133, ECF 138. Without such evidence, Defendants cannot show that security, the alleged objective of denying Plaintiff accommodations, was the "actual purpose" for Defendants' conduct. *Shaw*, 517 U.S. at 908 n.4 (quotation omitted). Thus, a genuine issue of material fact exists and the Court cannot determine, at the present stage, whether Defendants had a compelling State interest to constructively deny Plaintiff his religious items. The Court will therefore deny summary judgment on the RLUIPA claim.

But some of Plaintiff's claims for injunctive relief are moot. After Plaintiff sued, MDOC allowed him access to three of his requested items. ECF 132, PgID 3200. The doctrine of mootness stems from Article III's case and controversy requirement. *Hrivnak v. NCO Portfolio Mgmt., Inc.*, 719 F.3d 564, 566–67 (6th Cir. 2013). The

6

existence of a case or controversy "must be satisfied at the time a plaintiff first brings suit and [] must remain satisfied throughout the life of a case." *Id.* "If after filing a complaint the claimant loses a personal stake in the action, making it 'impossible for the court to grant any effectual relief whatever,' the case must be dismissed as moot." *Id.* (quoting *Church of Scientology v. United States,* 506 U.S. 9, 12 (1992)). Because Plaintiff received three of the items that he requested for use of them as he requested, he has no stake in an action to receive them. *See* ECF 132, PgID 3200. Thus, his claim for injunctive relief as to the three items is moot. Moreover, Plaintiff's amended complaint, ECF 24, did not mention all-white clothing, so the Court will not consider his RLUIPA claims related to all-white clothing. *See Forrester v. Am. Sec. & Prot. Serv. LLC*, No. 21-5870, 2022 WL 1514905, at *2 (6th Cir. May 13, 2022) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.") (quotation omitted).

II.  Section 1983 Claims

Defendants raised qualified immunity defenses against Plaintiff's First Amendment, Equal Protection, and Due Process § 1983 claims. ECF 80, PgID 734–50. Defendants also moved, in the alternative, for summary judgment as to each claim on the merits. *Id.* The Court will deny qualified immunity and summary judgment as to each § 1983 claim in turn.

To establish a § 1983 claim a plaintiff must prove "that (1) a person, (2) acting under color of [S]tate law, (3) deprived [him] of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (citation omitted). "Qualified

7

immunity is an affirmative defense" to a § 1983 claim. *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citation omitted). It "'shield[s]' public officials from money-damages liability if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Once a defendant asserts a qualified immunity defense, "[p]laintiff bears the burden of showing that [the] defendant[] [is] not entitled to qualified immunity." *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). Under qualified immunity, the Court must engage in a two-prong analysis and may ultimately decide which prong to analyze first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

First, the Court must "view the facts in the light most favorable to Plaintiff" and "determine whether the officer committed a constitutional violation." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (cleaned up). Second, "if there is a constitutional violation, the [C]ourt must determine whether that constitutional right was clearly established at the time of the incident." *Id.* "A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hearring v. Sliwowski*, 712 F.3d 275, 279 (6th Cir. 2013) (cleaned up). "While there need not be 'a case directly on point' for the law to be clearly established, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Barton*, 949 F.3d at 947–48.

8

(quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "When a defendant invokes qualified immunity in a motion for summary judgment, the plaintiff must offer sufficient evidence to create a genuine [issue] of fact that the defendant violated a clearly established right." *Folks v. Petitt*, 676 F. App'x 567, 569 (6th Cir. 2017) (citing *DiLuzio v. Vill. of Yorkville*, 796 F.3d 604, 608–09 (6th Cir. 2015)). "[U]nder either prong, courts may not resolve genuine [issues] of fact in favor of the party seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (collecting cases).

### A. *First Amendment Free Exercise Claim*

To begin, Plaintiff asserted a First Amendment free exercise claim. ECF 24, PgID 109–110. A free exercise claim requires several showings. "The first question is whether the belief or practice asserted is religious in the plaintiff's own scheme of things and is sincerely held." *Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019) (cleaned up). Next, "[u]nder the Supreme Court's test, the district court must ask whether the [Defendants'] denial of [Plaintiff's] request furthers a valid penological interest. If the [Defendants] cannot make such a showing, [Plaintiff] prevails." *Byrd*, 17 F.4th at 699 n.5 (citations omitted). For the second showing, Defendants must demonstrate that their denial of Plaintiff's requests was "reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89 (1987).

### 1. *Qualified immunity for free exercise claim*

The Court will analyze first whether there was a constitutional violation and second whether any such constitutional violation was clearly established.

9

### a. *Constitutional violation*

The Sixth Circuit held that Plaintiff's religious belief is sincere. *Byrd*, 17 F.4th at 699. And as discussed in the RLUIPA section above, Plaintiff has shown a genuine issue of material fact about whether any valid, pre-litigation penological interest was served by denying Plaintiff's requests. Again, post hoc justifications alone cannot prove the actual purpose for Defendants' actions. *See Haight*, 763 F.3d at 562. Thus, the Court cannot determine whether Plaintiff's free-exercise right was violated. In the end, whether Defendant had a valid, penological interest in denying Plaintiff's accommodation requests is a genuine issue of material fact.

### b. *Clearly established*

As for the second qualified immunity prong, it is clearly established that a prison may not restrict a prisoner's First Amendment rights unless it "prove[s] the necessity of any restrictions it imposes." *Walker v. Mintzes,* 771 F.2d 920, 929 (6th Cir. 1985). Indeed, "[p]risoners do not lose the right to free exercise of their religion by virtue of their incarceration." *Id.* (citing *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972)). But "[t]he [C]ourt must balance the prisoners' constitutionally protected interest in the free exercise of their religious beliefs against the [S]tate's legitimate interests in operating its prisons." *Id.* (citations omitted). Put another way, it was clearly established at the time of the alleged deprivation that Defendants were legally required to have a valid, penological interest to restrict Plaintiff's First Amendment rights.

Plaintiff alleged that Defendants denied his access to some of the same herbs that other prisoners, practicing other religions, were allowed to use. *Compare* ECF 80-2, PgID 771, *with* ECF 87-21, PgID 2289. And Defendants offered only post-litigation justifications for depriving Plaintiff of his requested religious accommodations. *See* ECF 80; 133; 138. At bottom, a genuine issue of material fact exists as to *why* Defendants denied Plaintiff the various items he needed to practice his faith and *why* they failed to approve Plaintiff's request to attend group religious services. Thus, the Court "cannot [] determine before trial whether [] Defendants did acts that violate[d] clearly established rights." *Flint ex rel. Flint v. Ky. Dep't of Corrs.*, 270 F.3d 340, 346 (6th Cir. 2001) (quotation omitted). Defendants' motivations for denying Plaintiff free exercise of his religion are therefore issues of material fact, and summary judgment is inappropriate on the grounds of qualified immunity as to that claim.

2.  *First Amendment claim on the merits*

The Court will also deny summary judgment on the merits of Plaintiff's free exercise claim because genuine issues of material fact exist over whether Defendants violated Plaintiff's free exercise rights.

As discussed in the qualified immunity section above, the sincerity of Plaintiff's religious belief is settled. *See Byrd*, 17 F.4th at 699. Thus, Plaintiff satisfied part one of his free exercise claim. *Id.* And Defendants have not shown that there is no general issue of material fact about whether they had a valid, penological interest to deny Plaintiff his free exercise rights. Based on the pleadings, evidence, and supplemental

11

briefs now before the Court, it cannot be determined as a matter of law whether Defendants' denial of Plaintiff's requests violated Plaintiff's free exercise right. Thus, Defendants are not entitled to summary judgment on Plaintiff's First Amendment free exercise claim.

### B. Equal Protection Claim

Plaintiff's equal protection claim concerned his access to three items and to group religious services. ECF 24, PgID 98–101, 111. As detailed above, his claim for injunctive relief about two of the items and group services are moot. And the Court will not consider an equal protection claim for all-white clothing, ECF 132, PgID 3200, because Plaintiff did not plead that claim in his amended complaint. *See* ECF 24; *Forrester*, 2022 WL 1514905, at *2 ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.") (cleaned up). Plaintiff's only remaining equal protection claim for injunctive relief is about his access to herbs.

Under the Equal Protection Clause, "states cannot make distinctions which either [(1)] burden a fundamental right, [(2)] target a suspect class, or [(3)] intentionally treat one [person] differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). "The threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). The Sixth Circuit instructed that the Court should consider Plaintiff's claim as a distinction

12

that burdened a fundamental right. *Byrd*, 17 F.4th at 699.[4] Thus, the Court must address Plaintiff's equal protection claim as follows. First, the Court must decide whether Defendants treated Plaintiff disparately. Second, the Court must decide whether Defendant's disparate treatment impinged on one of Plaintiff's fundamental rights. Third, if Defendants did treat Plaintiff differently and impinged on his fundamental rights, then Defendants must satisfy strict scrutiny.

The Court will use the three-step pattern outlined above to determine whether Defendants are entitled to summary judgment on qualified immunity. Next, the Court will apply the three-step pattern to Defendants' motion for summary judgment on the merits.

> 1. *Qualified immunity prong one: constitutional violation*

First, Defendants treated Plaintiff disparately when they constructively denied him the same religious items that other prisoners of a different religion were allowed to use for personal and group services. *Id.* at 700; ECF 80-2, PgID 771; ECF 87-21, PgID 2289; ECF 133, PgID 3250. Defendants McKee and Haas testified that they knew Plaintiff was denied the same religious items that other prisoners could

---

[4] Plaintiff relied on the first and third categories, burden of a fundamental right and intentional treatment of similarly situated people differently. ECF 132, PgID 3196. Defendants argued that the Court should view the case under only the third category. ECF 133, PgID 3255–58. But the Sixth Circuit instructed the Court to use the first category and "consider whether [D]efendants' constructive denial of [Plaintiff's] requests amounts to 'a facially discriminatory distinction [that] would burden [Plaintiff's] fundamental rights to religious freedom under the First Amendment.'" *Byrd*, 17 F.4th at 699.

13

use. ECF 87-18, PgID 2204–10; ECF 87-11, PgID 1996–2005. Thus, Plaintiff received disparate treatment.

Second, free exercise of religion is a fundamental right under the First Amendment. *See Bowman v. United States*, 304 F. App'x 371, 380 (6th Cir. 2008) (discussing a plaintiff's "fundamental right to the free exercise of his religion."). Because free exercise is a fundamental right, Defendants' "invidious purpose may be inferred." *Koger*, 964 F.3d at 545.

Third, Defendants argued strict scrutiny was satisfied because they denied Plaintiff's requests to ensure prison safety and security. ECF 133, PgID 3250. Defendants warned that "approving the herbs for personal use could put both staff and prisoners in danger." ECF 133, PgID 3250. But as discussed in the RLUIPA section above, "to be a compelling interest, the State must show that the alleged objective was the actual purpose for the government's action." *Haight*, 763 F.3d at 562 (cleaned up). And Defendants did not offer safety and security as their reason for constructively denying Plaintiff herbs until litigation had begun. *See* ECF 80; 133; 138; *see also Byrd*, 17 F.4th at 699. Defendants offered no pre-litigation documents or evidence that showed security and safety was their actual, pre-litigation purpose for denying Plaintiff's request. *See id.* Thus, there is a genuine issue of material fact about why Defendants denied Plaintiff's request, and the Court cannot determine whether Defendants can satisfy strict scrutiny. In the end, because of the issues of fact, the Court cannot determine whether there is "a facially discriminatory

14

distinction that would burden [Plaintiff's] fundamental rights to religious freedom under the First Amendment." *Byrd*, 17 F.4th at 699.

### 2. *Qualified immunity prong two: clearly established*

As for the second prong of the qualified-immunity analysis, the Court must find "whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Tolan*, 572 U.S. at 656 (cleaned up). For a defendant to deny a prisoner "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners" is "palpable discrimination by the State against the [prisoner]." *Cruz*, 405 U.S. at 322. Moreover, MDOC Policy Directive 05.03.150 instructs Defendants to recognize that "[a]ll recognized religions enjoy equal status and protection." ECF 80-2, PgID 758.

As discussed above, Defendants treated Plaintiff disparately. And the disparate treatment was presumptively invidious and impinged on Plaintiff's fundamental free exercise right. *See Koger*, 964 F.3d at 545. Last, the Court cannot determine whether Defendants are able to satisfy strict scrutiny. Because the Court cannot determine whether Defendants violated Plaintiff's constitutional rights, it cannot determine whether Defendants violated clearly established law. Thus, there are genuine issues of material fact that preclude the Court from granting summary judgment to Defendants on the basis of qualified immunity.

### 2. *Equal protection claim on the merits*

In the qualified immunity analysis of Plaintiff's equal protection claim above, the Court determined that a genuine issue of material fact exists about whether

15

Defendants made "a facially discriminatory distinction that would burden [Plaintiff's] fundamental rights to religious freedom under the First Amendment." *Byrd*, 17 F.4th at 699. For the same reason, the Court cannot grant Defendants summary judgment on the merits.[5]

### C. Due Process Claim

Plaintiff asserted a Fourteenth Amendment due process claim based on Defendant Haas's refusal to forward Plaintiff's requests for religious accommodations. ECF 24, PgID 111. A plaintiff who alleges a procedural due process claim under the Fourteenth Amendment must demonstrate "(1) a liberty or property interest protected by the due process clause; (2) a deprivation of that protected interest within the meaning of the due process clause; and (3) defendants' failure to afford adequate procedural rights prior to the deprivation." *Russell v. Wilkinson*, 79 F. App'x 175, 178 (6th Cir. 2003) (citation omitted). For liberty interests owed to a prisoner, the "inmate must show that the actions of prison officials either had the effect of altering the length or term of imprisonment or amounted to [an] 'atypical

---

[5] The Sixth Circuit instructed that "when assessing the officers' qualified-immunity defense, the district court should consider the delay from the time of [Plaintiff's] first request in September 2015 to the day he filed his complaint. But when assessing his claims for injunctive relief, the district court should consider his delay still ongoing." *Byrd*, 17 F.4th at 698 n.4. Thus, Defendants' delay is longer for the claim for injunctive relief as compared to the claims Defendants asserted the qualified immunity defense against. The length of delay, therefore, does not change the Court's on-the-merits analysis of the equal protection claim.

16

and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

First, the Court will address Defendant Haas's motion for summary judgment based on qualified immunity. Then, the Court will address his motion for summary judgment on the merits.

### 1. *Qualified immunity*

The Court will analyze first whether there was constitutional violation and second whether any such constitutional violation was clearly established.

#### a. *Constitutional violation*

The Sixth Circuit held that Plaintiff was constructively denied his right to freely exercise his religion—a liberty interest protected by the Due Process Clause. *Byrd*, 17 F.4th at 697–98, 700. Thus, Plaintiff has met the first two prongs of a due process claim. Only the third prong, whether Defendant failed to provide adequate due process before the deprivation, remains. *See* ECF 133, PgID 3254 ("Based on the Sixth Circuit opinion, Defendants will forego any further argument on the first prong of the analysis, but Plaintiff[] . . . has not alleged that the post-deprivation remedy was inadequate.").

Plaintiff "sent four requests" for religious accommodations. *Byrd*, 17 F.4th at 695. He "took every conceivable action to pursue his claim. He had nowhere else to turn. Only the prison officials failed to bring [Plaintiff's request for accommodation] to fruition." *Id.* at 698. "Not one [of Plaintiff's four requests] made its way . . . for a final decision" *Id.* at 695. Defendant Haas's refusal to forward Plaintiff's requests for

17

religious accommodation therefore left Plaintiff "unable to practice his religion." *Byrd*, 17 F.4th at 697 (quotation omitted). Thus, Plaintiff has shown that a genuine issue of material fact exists about whether Defendant's denial of Plaintiff's right to exercise his religious beliefs imposed an atypical or significant hardship. And the Court cannot grant summary judgment based on the first qualified immunity prong.

### b. *Clearly established*

As for the second qualified immunity prong, it is clearly established that "[i]ncarceration in a penal institution does not extinguish the protections on the free exercise of religion afforded by the First Amendment." *Bakr v. Johnson*, 121 F.3d 707, \*1. Defendant Haas denied Plaintiff's request for religious accommodation for twenty months. *See Byrd*, 17 F.4 at 698. *Compare* ECF 1, *with* ECF 80-3 (September 2, 2015 until May 2, 2017). Whether a twenty-month delay is an atypical or significant hardship such that Plaintiff's right to practice was "extinguished," and thus violative of clearly established Constitutional law, is a genuine issue of material fact. *See Bakr*, 121 F.3d at \*1. Thus, the Court cannot grant summary judgment on qualified immunity based on the second prong. The Court will therefore deny summary judgment based on qualified immunity.

### 2. *Due process claim on the merits*

As the Court found in the qualified immunity section above, there is a genuine issue of material fact about whether Defendant failed to afford adequate procedural rights before deprivation. Thus, the Court will also deny Defendant Haas summary judgment on the merits.

## CONCLUSION

With the summary judgment motion now resolved, the Court believes that the parties would benefit from intercession of a court-appointed mediator. The Court will therefore refer the parties to Mr. Patrick Seyferth[6] for mediation. The mediation must take place no later than November 30, 2022. The Court will set the final pretrial conference and trial dates in a later order.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the summary judgment motion [80] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court **REFERS** the case to Mr. Patrick Seyferth for mediation and settlement discussions and **ORDERS** the parties to proceed in compliance with Local Rule 16.4. The mediation and settlement discussions must occur **no later than November 30, 2022**. The parties must contact Mr. Seyferth and provide him with a copy of this order as soon as practicable and must **NOTIFY** the Court of the date of the mediation session once it is scheduled.

**IT IS FURTHER ORDERED** that Mr. Seyferth must **NOTIFY** the Court within seven days of completion of the mediation, "stating only the date of completion, who participated, whether settlement was reached, and whether further [alternative dispute resolution] proceedings are contemplated." E.D. Mich. L.R. 16.4(e)(6). If a settlement is reached, the parties must **NOTIFY** the Court right after completing the

---

[6] Patrick Seyferth, an experienced federal mediator, is a private attorney and founding member of the firm Bush Seyferth, PLLC. He can be reached at (248) 822-7802 and at Seyferth@bsplaw.com.

mediation and must **SUBMIT** a proposed order of dismissal within twenty-one days. *Id*. at 16.4(e)(7). If a settlement is not reached, the parties must **NOTIFY** the Court within five days of the completion of the mediation.

**SO ORDERED.**

s/ Stephen J. Murphy, III<br>
STEPHEN J. MURPHY, III<br>
United States District Judge

Dated: September 26, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 26, 2022, by electronic and/or ordinary mail.

s/ David P. Parker<br>
Case Manager